**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

NOV 22 2013

Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| IN RE APPLICATION OF THE ) <br> UNITED STATES OF AMERICA FOR ) <br> AN ORDER PURSUANT TO ) <br> 18 U.S.C. §2703(d) FOR PHONE ) <br> NUMBER **334-648-2934** ) <br> ) | MISC. NO. *13-1314* |

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. §2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order pursuant to 18 U.S.C. §2703(d). The proposed Order would require Cellco Partnership, doing business as, Verizon Wireless-AL ("Verizon"), a cellular service provider located in Bedminster, NJ, to disclose certain records and other information pertaining to the cellular service account with the phone number of 334-648-2934. The records and other information to be disclosed are described in Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND

1. Verizon is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. §2711(2). Accordingly, the United States may use a court order issued under §2703(d) to require Verizon to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. §2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. §2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction" as defined in 18 U.S.C. §2711. *See* 18 U.S.C. §2703(d). Specifically, the

the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. §2711(3)(A)(i).

3. A court order under §2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. §2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4. The United States is investigating criminal violations of 26 U.S.C. § 5861(d) (Possession Unregistered Firearm), 22 DC Code § 4504(a-1) (Carrying a Rifle or Shotgun (Outside Home or Place of Business)), and 22 DC Code §4504(a)(1) (Carrying a Pistol (Outside Home or Place of Business)).

5. On or about Monday, November 4, 2013, Joseph Daniel Hallford "Hallford", drove his father's red, four-dour 2012 Chrysler, bearing Alabama license plate number 38D27V8 (the "Vehicle"), from his home in Slocomb, Alabama, toward Washington, DC, to participate in a planned protest demonstration and march called the "Million Mask March" to be held in front of the White House on November 5. He arrived in DC on the morning of November 5 and participated in the planned event later that day.

6. On or about November 6, at approximately 4:53 AM, a United States Park Police ("USPP") officer found the Vehicle parked on Ohio Drive, S.W., just south of Independence Avenue, S.W. The USPP officer placed an "unattended vehicle" tag on the vehicle. Later that

same day, Hallford checked himself in at the George Washington University ("GWU") Hospital Emergency Room in Northwest DC, complaining of internal bleeding and pain. While there, Hallford was "aggressive toward staff," threatened to cause physical harm to members of the staff, and indicated that he had come to DC to provoke the United States Secret Service ("USSS") to shoot him. Based on his statements and overall conduct, he was involuntarily committed for emergency observation and diagnosis for a potential mental illness and transferred to the United Medical Center ("UMC") in Southeast DC.

7. On November 6, the USSS was also notified of Hallford's statements. That evening, two Special Agents with the USSS went to UMC to attempt to interview Hallford about his statements. Upon coming into contact with Hallford, the USSS Special Agents identified themselves to Hallford, advised him that he was not under arrest or in any trouble, and asked him if they could speak with him further about some alleged statements he had made about the USSS. Hallford assented to answering the agents' questions and a noncustodial interview began. During the interview, Hallford stated, among other things, that he had attended a protest in front of the White House on November 5 and yelled at USSS personnel, "Shoot me, shoot me." When later questioned about his ownership of any weapons, Hallford admitted to the USSS Special Agents that he did own some. Hallford initially indicated that the weapons were located at his home in Alabama, but later corrected that statement and acknowledged that the weapons were in a vehicle he had driven to DC (i.e., the Vehicle). Hallford also told the agents that if they looked in the Vehicle, they would find some "bad things" there, including multiple firearms and a "Molotov cocktail." Hallford stated that the Molotov cocktail in the Vehicle was for "protection against gangs in Alabama." When the agents asked Hallford where the car was located in DC,

Hallford stated that he did not recall exactly where he parked the Vehicle or its license tag number. Hallford did, however, indicate that the Vehicle was his father's.

8. After interviewing Hallford, the USSS Special Agents contacted Hallford's father by telephone and obtained additional descriptive information for the Vehicle, including the color, make and model, and license plate number of the car. The USSS thereafter relayed the Vehicle's identifying information to various law enforcement agencies in DC and VA in an effort to locate the vehicle.

9. On November 6, at approximately 7:50 PM, USPP Communications issued a radio broadcast over law enforcement channels to be on the lookout for the Vehicle. A USPP officer recognized the lookout description as matching that of the Vehicle, which had been tagged as an "unattended vehicle" earlier that day (see paragraph 5 above). The USPP officer went to the location of the Vehicle and positively identified it as being the subject of the lookout. The USPP officer requested assistance from the Metropolitan Police Department's Explosive Ordnance Destruction unit ("MPD EOD") because the Vehicle was parked in close proximity to the Lincoln Memorial, and there was a large volume of both pedestrian and vehicle traffic in and around the immediate area of the Vehicle. MPD EOD secure perimeter was established around the car. Around the same time, a USSS Special Agent contacted Hallford's father again and obtained consent to search the Vehicle for weapons or other evidence of criminal violations.

10. On the evening of November 6, 2013, MPD EOD made entry into the Vehicle. The following items were found inside a suitcase on a rear passenger seat of the vehicle:

- A brown glass Worcestershire bottle containing, among other things, a firework, several unlit matches, Q-tips coated in a black substance, Styrofoam, an

assortment of metal pieces, a "live" round of .22 caliber ammunition, and a rag protruding from the top (i.e., a suspected Molotov cocktail); and

- One .45 caliber semi-automatic AMT pistol with one round in the chamber and four rounds in an affixed magazine.

The following items, among others, were found in the trunk of the vehicle:

- One black 12-gauge Mossberg Maverick 88 shotgun with a nine-pellet 00 buck round in the chamber, 14 rounds in the chamber, and a tactical light affixed to the barrel;

- One black, .22 caliber Marlin 60 rifle with one round in the chamber and 14 rounds in an inserted magazine;

- One black .22 caliber Mossberg 702 Plinkster rifle with one round in the chamber and 10 rounds in an inserted magazine;

- Several clear ziplock bags, containing numerous boxes and loose rounds of various caliber sizes of ammunition, including caliber ammunition compatible for use in the above-referenced firearms.

- Three boxes of Coleman brand waterproof matches;

- One five-gallon, plastic, gasoline canister with a small amount of liquid, later identified as gasoline;

- One camouflage soft body armor vest; and

- One black and silver hatchet.

Also found inside the passenger compartment of the vehicle were three separate receipts, indicating that the shotgun and two rifles had been purchased from three separate locations in early October 2013.

11. The USPP later transferred the components of the suspected Molotov cocktail, including the plastic gasoline container with liquid, to the ATF forensics evidence laboratory for further analysis.

12. The ATF has examined the components of the suspected Molotov cocktail and determined that they constitute a combination of parts either designed or intended for use in converting any device into a "destructive device," as defined in 26 U.S.C. § 5845(f), and from which a "destructive device" may be readily assembled. Hallford has not registered or attempted to register any "destructive devices" with the National Firearms Registration and Transfer Record. Accordingly, Hallford's possession of the above-referenced components violates 26 U.S.C. § 5861(d).

13. The DC Firearms Registration Business Services Division has been contacted to ascertain whether Hallford has ever applied for or received a license or registration to carry a 12-gauge Mossberg Maverick 88 shotgun, .22 caliber Marlin 60 rifle, .22 caliber Mossberg 702 Plinkster rifle, or .45 caliber semi-automatic AMT pistol. Hallford has never applied for or received a license or registration from the DC Firearms Registration Business Services Division to carry a 12-gauge Mossberg Maverick 88 shotgun, .22 caliber Marlin 60 rifle, .22 caliber Mossberg 702 Plinkster rifle, or .45 caliber semi-automatic AMT pistol. Each of these firearms has been test-fired and determined to be operable. Accordingly, Hallford's carrying of the shotgun/rifles, and pistol in the District of Columbia violates DC Code §22-4504(a-1) and 22-4504(a)(1), respectively.

14. On November 8, 2013, Hallford was placed under arrest at UMC by officers of the USPP, acting pursuant to an arrest warrant issued by a judicial officer of the Superior Court of the District of Columbia. Among Hallford's personal effects was a black cellular telephone,

further identified as a Motorola Droid ("Hallford cellular telephone").  The USPP seized Hallford's cellular telephone.

15. On November 18, 2013, the United States applied for and obtained a federal criminal complaint and arrest warrant for Hallford. The criminal complaint charges Hallford with violating 26 U.S.C. § 5861(d) and DC Code § 22-4504(a-1). Hallford was previously arrested on the DC Code offense alone and remains in custody.

16. To date, the criminal investigation indicates that Hallford utilized a cellular telephone to take photographs and post photographs and comments to a Facebook page on or around December 4-6, 2013, in connection with his travel to DC with the firearms and Molotov Cocktail and participation in the event in front of the White House.  Further investigation has revealed that Hallford's cellular telephone number at and around this same time was 334-648-2934, and his cellular telephone service was provided by Verizon.

## REQUEST FOR ORDER

17.    The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to establish Hallford's communications and movements during the relevant time period, identify and locate potential accomplices who are responsible for the unlawful activities described above, and to determine the nature and scope of Hallford's and any of his accomplices' illegal activities. Accordingly, the United States requests that Verizon be directed to produce all items described in Part II of Attachment A to the proposed Order.

Respectfully submitted,

/s/ T. Patrick Martin
T. Patrick Martin
Assistant United States Attorney
United States Attorneys Office
555 4th Street, NW Room 11-439
Washington, D.C. 20530
(202) 252-7398
Thomas.Martin@usdoj.gov